IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE AARON'S, INC. SECURITIES LITIGATION** | : | **CIVIL ACTION NO. 1:17-CV-2270-SCJ** |

**ORDER**

This matter appears before the Court on Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws (Doc. No. [50]).

## I. BACKGROUND

On October 27, 2017, Lead Plaintiff, the Arkansas Teacher Retirement System (hereinafter "Plaintiff") filed a Consolidated Complaint for violations of the federal securities laws against Aaron's, Inc.[1] and individual defendants, John W. Robinson III (Chief Executive Officer of Aaron's), Steven A. Michaels (President of Aaron's), Ryan K. Woodley (Chief Executive Officer of Aaron's

[1] "Defendant Aaron's sells and leases-to-own furniture, consumer electronics and other merchandise." Doc. No. [41], ¶ 32. "Aaron's common stock trades under the ticker symbol 'AAN' on the NYSE, which is an efficient market. Aaron's has over 70 million shares outstanding, owned by hundreds or thousands of investors." Id.

subsidiary, Progressive Leasing, hereinafter "Progressive"),[2] and Gilbert L. Danielson[3] (Chief Financial Officer of Aaron's). Doc. No. [41], ¶¶ 32–36. The Complaint asserts two causes of action. The first cause of action (asserted against all Defendants) is for violation of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b) and SEC Rule 10b-5, promulgated under 17 C.F.R. § 240.10b-5. The second cause of action (asserted against the individual Defendants) is for violation of Section 20(a) of the Exchange Act. Doc. No. [41], pp. 123–26.

Plaintiff states that "[t]his securities fraud class action arises from Defendants' materially false and misleading statements and omissions to

---

[2] The Complaint refers to Progressive Leasing as a subsidiary of Aaron's. Doc. No. [41], ¶ 33. In their briefing, Defendants refer to Aaron's subsidiary as Progressive Finance Holdings, LLC. Doc. No. [50-1], p. 8. This Court will refer to Progressive Leasing and Progressive Finance Holdings, LLC as "Progressive." "Progressive is a 'virtual' [rent-to-own/RTO] company that, like Aaron's, offers lease-purchase solutions to credit-challenged retail customers. Unlike Aaron's, however, Progressive does not operate any retail stores. Instead, Progressive purchases requested merchandise from third party stores and then leases the merchandise to the customer." Doc. No. [41], ¶ 3. "Progressive, in contrast [to Aaron's] requires no . . . face-to-face interaction. Rather, customers seek credit approval through cash register or point of sale systems, or through electronic kiosks. Progressive relies on its proprietary algorithm—which purportedly considers hundreds of variables and attributes—to determine a customer's ability to pay and make underwriting decisions. Progressive thus 'virtualizes' the RTO experience and offers it directly in a retailer's location." Id. ¶ 60.

[3] The Consolidated Complaint states that "Danielson left Aaron's on December 31, 2016." Doc. No. [41], ¶ 36.



AO 72A
(Rev.8/82)

investors about the benefits of Progressive's lease underwriting algorithm to Aaron's business, the functionality of that algorithm, and the Company's financial state." Doc. No. [41],¶ 1. In its briefing, Plaintiff states that: "Aaron's failed to disclose to investors that it was using the algorithm in a defective way without the most valuable data feeds the algorithm relied upon." Doc. No. [62], p. 4. Plaintiff also states that it "grounds it case on allegations that once Defendants chose to tout Aaron's business in . . . positive terms, they had a duty to disclose the data loss and [a subsequent] software coding problem [and] Defendants failed to do so." Doc. No. [54], p. 11.

As correctly stated by Defendants, to support its primary violator claims under Section 10(b) and Rule 10b-5, Plaintiff alleges the following false and misleading statements made by Defendants during the Class Period:[4] (i) the Company's revised earnings projections announced after the first and second quarters of 2015 (the "**Guidance Statements**")[5]; (ii) certain statements reporting and commenting on the performance of Aaron's and Progressive in the first and

---

[4] The class and class period are described in the Consolidated Complaint as follows: "all persons and entities who purchased or otherwise acquired Aaron's common stock between February 6, 2015 and October 29, 2015." Doc. No. [41], p. 4; see also id. ¶ 205.

[5] Doc. No. [41], ¶¶ 97, 119, 124.



AO 72A
(Rev.8/82)

second quarters of 2015 (the "**Performance Statements**")[6]; and (iii) certain statements regarding the operation and strength of, and risks associated with, the Company's technology, including the Progressive algorithm[7] (the **"Technology Statements"**). Doc. No. [50-1], pp. 15–16. Plaintiff alleges that each of these challenged statements was materially false and misleading "because these statements were made at a time when the Defendants knew or recklessly disregarded that Aaron's had increased its pool of high-risk customers likely to default," as a result of Progressive's temporary data feed interruption and software coding issue. Doc. Nos. [41], ¶ 21; [50-1], pp. 15–16.[8]

---

[6] Doc. No. [41], ¶¶ 81, 97, 101, 107, 109, 113, 119, 124, 126, 128, 134, 138, 140, 142, 145, 147, 154.

[7] Doc. No. [41], ¶¶ 77, 79, 83, 85, 90, 92, 95, 99, 103, 105, 109, 111, 115, 121, 130, 132, 136, 149, 152.

[8] "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."). While the Court accepts the factual allegations as true and construes them in the light most favorable to Plaintiff, securities fraud claims are subject to heightened pleadings standards that must be met to survive a motion to dismiss. In re AIG Advisor Grp. Sec. Litig., 309 F. App'x 495, 497 (2nd Cir. 2009). Plaintiff must plead with particularity the circumstances constituting fraud. Id. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs,



AO 72A
(Rev.8/82)

On December 15, 2017, Defendants filed a Motion to Dismiss the Consolidated Complaint. Doc. No. [50]. This motion has been fully briefed and is ripe for review.[9]

## II. LEGAL STANDARD

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561–62, 570 (2007) (retiring the prior Conley v. Gibson, 355 U.S. 41, 45-46 (1957) standard which provided that in reviewing the sufficiency of a complaint, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand

551 U.S. at 322–23 (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). More specifically, Plaintiff asserts that the Court may not consider Defendants' chart showing second quarter-over-first quarter bad debt expense, as outside the four corners of the Complaint. Doc. No. [54], p. 39. In light of Plaintiff's objection, the Court agrees that it is not proper to consider the bad debt report that falls outside of the four corners of the Complaint.

[9] Oral argument was held on May 18, 2018. Minute entry of May 18, 2018.



AO 72A
(Rev.8/82)

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.

In Twombly, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations and emphasis omitted).

Because Plaintiff asserts securities fraud claims against Defendants, Plaintiff must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Federal Rule of Civil Procedure 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The United States Court of Appeals for the Eleventh Circuit has held,

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such



AO 72A
(Rev.8/82)

> statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Mizzaro, 544 F.3d at 1237 (citation omitted).[10] In addition, the Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat. 737 (1995), imposes a heightened pleading standard for scienter. Id. at 1238.[11] Plaintiff must, "with respect to each act or omission alleged to violate [the relevant code section], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

"Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that a defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading, and (2) state with particularity facts giving rise to a strong inference that the defendant acted with

---

[10] "Notably, the '[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005)).

[11] "Private federal securities fraud actions are based upon federal securities statutes and their implementing regulations." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). "Although the PSLRA applies only to a suit that is brought as a plaintiff class action, the statute's rules apply whether or not the class is certified." Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 756 (7th Cir. 2007) (citations and quotations omitted).



AO 72A
(Rev.8/82)

the required state of mind." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007) (15 U.S.C. § 78u–4(b)(1) and (b)(2) (internal quotations omitted).

"Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.'" Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (citing 15 U.S.C. § 78j(b)). "Commission Rule 10b–5 forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any material fact 'necessary in order to make the statements made . . . not misleading.'" Id. (citing 17 CFR § 240.10b–5).

"In cases involving publicly traded securities and purchases or sales in public securities markets, the [private] action's basic elements include: (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." Dura Pharm., 544 U.S. at 341–42 (citations omitted).[12]

---

[12] Section 20(a) of the Exchange Act provides that . . .

## III. ANALYSIS

Defendants seek dismissal on the following grounds: (1) the PSLRA safe harbor protects many of the challenged statements; (2) Plaintiff fails to plead falsity with particularity;[13] and (3) Plaintiff fails to allege facts raising a strong inference of scienter.[14] Doc. Nos. [50], p. 2; [50-1], p. 2. Defendants further assert that: Plaintiff's claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Messrs. Robinson, Michaels, Woodley, and Danielson must be dismissed

---

> "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall . . . be liable jointly and severally liable with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). This statute "imposes derivative liability on persons that control primary violators of the Act." Laperriere v. Vesta Ins. Group, Inc., 526 F.3d 715, 721 (11th Cir.2008). In order to state a claim under Section 20(a) based on a violation of Section 10(b), a plaintiff must allege that: (1) a primary liability under Sec tion 10(b) exists; (2) the defendants had the "power to control the general business affairs" of the corporation; and (3) the defendants had the requisite power to "control or influence the specific corporate policy which resulted in primary liability." Theoharous v. Fong, 256 F.3d 1219, 1227 (11th Cir. 2001). Because a primary violation of the securities laws is an essential element of a section 20(a) derivative claim, a plaintiff adequately pleads a section 20(a) claim only if the primary violation is adequately pleaded. Id. Thus, . . . the pivotal issue in this action is whether Plaintiff adequately pleaded a violation of section 10(b) and Rule 10b–5.

In re HomeBanc Corp. Sec. Litig., 706 F. Supp. 2d 1336, 1352 (N.D. Ga. 2010); see also Mizzaro, 544 F.3d at 1236–37.

[13] Doc. No. [50-1], p. 25.

[14] Id.



AO 72A
(Rev.8/82)

for failure to plead a viable primary violation of the Exchange Act. Doc. No. [50], p. 2.

The Court will assume *arguendo* that Plaintiff has sufficiently pled its allegations of misrepresentations and omissions and the absence of the application of the safe harbor. Accordingly, the Court begins its analysis with the third ground of Defendants' motion, i.e., scienter.

"[U]nder the PSLRA, the plaintiff must state with particularity facts giving rise to a 'strong inference' that the defendant acted with scienter." In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1275, n.10 (11th Cir. 2016) (citations omitted). In the Eleventh Circuit "[s]cienter consists of intent to defraud or 'severe recklessness' on the part of the defendant." Id. (citations omitted).[15] "Severe recklessness is 'limited to those highly unreasonable omissions or misrepresentations that involve . . . an extreme departure from the standards of ordinary care' that are so likely to mislead that 'the defendant must have been aware of it.'" Id. (citations omitted).

"[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference

[15] Scienter has also been defined as "'a mental state embracing intent to deceive, manipulate, or defraud.'" Tellabs, 551 U.S. at 319.



AO 72A
(Rev.8/82)

that the defendant acted with the required state of mind [i.e., scienter]. Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute. If these PSLRA pleading requirements are not satisfied, the court shall dismiss the complaint." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296–97 (11th Cir. 2011) (citations and internal quotations omitted).

"[A] complaint will survive [a motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Brophy v. Jiangbo Pharm., Inc., 781 F.3d 1296, 1302 (11th Cir. 2015) (citing Tellabs, 551 U.S. at 324). "Although [the Court] draw[s]any reasonable inferences available on the face of the complaint in the investors' favor, [the Court] also must look to 'plausible, nonculpable explanations for the defendant's conduct' in evaluating an inference of scienter." Id.; see also Tellabs, 551 U.S. at 314 (holding that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.").

"The inquiry [after considering the complaint in its entirety]. . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322–23.

In deciding whether allegations of scienter are sufficient to survive a motion to dismiss, a court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" Mizzaro, 544 F.3d at 1239.

The Court now considers whether Plaintiff's "allegations of scienter are sufficient to support a claim and whether scienter has been pled with appropriate particularity." In re Sci.-Atlanta, Inc. Sec. Litig., 239 F. Supp. 2d 1351, 1365 (N.D. Ga. 2002), *aff'd sub nom.* Phillips v. Sci.-Atlanta, Inc., 374 F.3d 1015 (11th Cir. 2004).

Plaintiff's scienter allegations are primarily in paragraphs 173–191 of the Complaint. Doc. No. [41], p. 114. In the briefing, Plaintiff asserts that certain allegations collectively raise a strong inference that Defendants acted knowingly or with severe recklessness that is more cogent and compelling than Defendants' purportedly innocent explanations. Doc. No. [54], p. 42. Those allegations are

as follows: (1) Defendants had knowledge of the material adverse facts at the time that they made misstatements; (2) there were red flags, through increases in bad debt expense and tracked lease delinquencies; (3) the proper operation of the Progressive algorithm is critical to Aaron's "core operation" of issuing leases, and that the data loss occurred over a ten-week period; (4) Defendants made repeated, specific references to the Progressive algorithm—including that Defendants were personally knowledgeable about the algorithim and how it worked; (5) Defendants were motivated to conceal the data outage and software issues from the market because, after rejecting a lucrative takeover offer and betting Aaron's future on the acquisition of Progressive and its algorithm; (6) each of the individual defendants was a senior officer of Aaron's with direct knowledge of the issues the Company faced; and (7) Defendant Danielson's resignation as Aaron's CFO shortly after the end of the class period.

In their briefing, Defendants provided the following nonculpable explanation for their actions:

> While the Company learned of the data feed outage in February 2015, it had no reason to believe that the future performance of the Impacted Lease Pools would be out of the ordinary until after discovering the software coding issue in August 2015. As Plaintiff itself acknowledges, prior to that point, the Company's early performance indicators indicated that the Impacted Lease Pools



AO 72A
(Rev.8/82)

> were performing as anticipated and, unbeknownst to the Company, the software coding issue was masking delinquencies among the Impacted Lease Pools.[16] Plaintiff has not been able to locate any confidential witness or particular report or communication suggesting any Defendant was aware during 1Q15 or 2Q15 of any contradictory information about the Impacted Lease Pools' performance. Upon discovering the software coding issue in 3Q15, the Company suspected for the first time that the data feed interruption may have led to poorer quality leases in the Impacted Lease Pools than originally believed. After conducting a reasonable investigation into this issue, including evaluation of its 3Q15 results, the Company determined that, though they were still expected to be profitable, the Impacted Lease Pools had, contrary to early indications, performed worse than anticipated due to the data feed interruption. The Company then promptly disclosed this information to investors in October 2015 along with its 3Q15 results. Prior to that disclosure, not a single Individual Defendant attempted to capitalize on any purported inflation in the Company's stock price with insider sales.

Doc. No. [50-1], p. 41.[17]

---

[16] Plaintiff asserts self-serving hearsay and that the "determination of to what extent the software issue supposedly masked the problems caused by the dataset loss" is a "fact-based inquiry" that is not appropriate for resolution on motion to dismiss. Doc. Nos. [54], p. 37, n.34; [66], p. 75, lines 12–17. In the context of this Order, the Court has not endeavored to determine the extent of the software issue, but notes that even the allegations of the Complaint reference the software code issue. See e.g., Doc. No. [41], ¶¶ 17, 22, 74(iii), 178.

[17] Defendants also state: "Plaintiff's allegations . . . more compellingly suggest a nonculpable explanation for Defendants' actions—that while the Company learned of the temporary third-party data feed interruption in February 2015, it did not believe that the future performance of the Impacted Lease Pools would be out of the ordinary for several reasons: (1) although certain data attributes had been interrupted, the Progressive algorithm still had several hundred others upon which it could rely; (2) early performance indicators were positive about the performance of the Impacted Lease Pools; and (3) whatever negative data regarding bad debt levels the Company may have otherwise seen via delinquency reports was masked by the software issue that failed to timely identify those delinquencies."



AO 72A
(Rev.8/82)

As stated above, the Court must ask the following question in determining whether allegations of scienter are sufficient to survive a motion to dismiss: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference? Mizzaro, 544 F.3d at 1239. The Court concludes that the answer to this question is in the negative.

While the parties make a number of arguments and citations of binding and non-binding authority,[18] after review, the Court upholds the arguments and citations of authority by Defendants, as the Court agrees that there are "fraud by hindsight" problems with the Complaint in that the statements that Plaintiff utilizes to show Defendants' admissions (and knowledge of the material adverse facts) occurred on October 30, 2015, after the events (at issue) had transpired and

---

Doc. No. [58], p. 24.

[18] The Court recognizes that Plaintiff accuses Defendants of misstating the "core" of its allegations and asserts that it is incorrect to say that "Plaintiff's case depends entirely on Defendants' alleged failure to disclose both the data feed outage at issue and that Aaron's financial guidance was unattainable due to that outage." Doc. No. [60], p. 1. Plaintiff states that "[t]he Complaint similarly alleges that Aaron's risk disclosures are false statements of present fact that do not depend on any negative future financial impact because the disclosures warned of potential risks that had in fact already materialized." Doc. No. [60-1], p. 4. Plaintiff also states: "[h]ere, Aaron's . . . failed to disclose to investors that it was using its algorithm in a defective way." Id. at p. 5. In response, Defendants state that paragraph 15, 74, and 78 of the Complaint confirm its characterization of the core arguments. Doc. No. [61], p. 5.



AO 72A
(Rev.8/82)

Defendants knew how the lease pools had performed. Doc. Nos. [41], ¶175; [66], p. 79, lines 1–6; see also In re HomeBanc Corp. Sec. Litig., 706 F. Supp. 2d 1336, 1360 (N.D. Ga. 2010) ("Plaintiff's reliance upon after-the-fact events . . . to support an inference that these and other earlier statements must have been intentionally misleading and made with scienter amounts to little more than fraud by hindsight, which is not actionable."). The Court also concludes that Plaintiff's "red flag" allegations of scienter are insufficient in that "Plaintiff fails to plead any facts, . . . [that provide an apples-to-apples comparison] showing that [the] quarter-over-quarter increase was in any way unusual for Aaron's business"—even post-acquisition of Progressive. Doc. No. [50-1], p. 36.

The Court also agrees that Plaintiff's "commonsense" argument (i.e., if there are missing data feeds for an algorithm, the company is necessarily approving riskier customers),[19] is not accompanied by particular facts showing that Defendants knew that a financial impact was inevitable or that Defendants were severely reckless in not knowing. Doc. No. [66], p. 86, lines 9–19; p. 88, lines 21–23.

[19] Doc. No. [66], p. 63, lines 8–16.



AO 72A
(Rev.8/82)

Plaintiff also relies on the authority that indicates that a defendant's knowledge of materially adverse facts at the time he made a contrary misstatements is classic evidence of scienter (Doc. No. [54], p. 35); however, the case law relied upon was decided prior to 2007 and the Supreme Court's decision in Tellabs, which holds that the scienter inquiry "is whether all of the facts alleged, ***taken collectively***, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 310 (emphasis added). To this regard, even if the misstatement at issue was made with knowledge of the adverse facts is evidence of scienter, the Court does not stop here and must consider the collective facts alleged, as well as the plausible opposing inference—as even in the FindWhat decision (relied heavily upon by Plaintiff to establish deceit),[20] the Eleventh Circuit found materially misleading misstatements, but affirmed dismissal of the complaint on the basis of a failure to plead scienter adequately. FindWhat also does not specifically address how to balance the duty to investigate, which Defendants assert here. Doc. No. [66], p. 86, lines 2–7 (stating that when we started to

[20] See e.g., FindWhat, 658 F.3d at 1299 ("to warn that the untoward may occur when the event is contingent is prudent, to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.").

appreciate the financial impact of the February 2015 outage in August 2015, "there's when [Defendants had] the duty to investigate it."); see also Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal. After all, delay in correcting a misstatement does not cause the loss; the injury to investors comes from the fraud, not from a decision to take the time necessary to ensure that the corrective statement is accurate.") (citations omitted).

In addition, without more (such as insider stock sales[21]or a confidential informant), the Court does not find that Plaintiff's motive and opportunity to commit fraud (to prevent questioning of the propriety of the Progressive acquisition and Aaron's prospects for growth and success)[22] arguments are

---

[21] The Court recognizes that the Eleventh Circuit has "emphasize[d] that suspicious stock sales are not necessary to create a strong inference of scienter [and] . . . . [i]nstead, the presence or absence of such allegations must be assessed in light of all of the allegations found in the complaint." Mizzaro, 544 F.3d at 1253, n.3. In light of all of the allegations in the complaint, the Court finds that lack of stock sales weighs against inferring scienter. Id. Similarly, the sole resignation of CFO Danielson, without more, does not create a strong inference of scienter. The cases cited by Plaintiff (Doc. No. [54], p. 42, n.40) are also distinguishable in that the inference of scienter was based on more than one resignation.

[22] Doc. No. [41], ¶ 179.



AO 72A
(Rev.8/82)

sufficient to raise a strong inference of knowing or reckless conduct, "[b]ecause such motives" of maintaining the stock price in order to maintain the reputation of the company and facilitate mergers and acquisitions can be ascribed to virtually all corporate officers and directors. Malin v. Ivax Corp., 17 F. Supp. 2d 1345, 1361 (S.D. Fla. 1998), *aff'd sub nom.* Malin v. IVAX, 226 F.3d 647 (11th Cir. 2000). "[T]he Eleventh Circuit has [also] rejected the notion that 'allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter.' The [Eleventh Circuit has] pointed out that allegations of motive and opportunity could be relevant to demonstrate scienter but [also] concluded that motive and opportunity are specific kinds of evidence rather than a substantive standard." In re Sci.-Atlanta, Inc. Sec. Litig., 239 F. Supp. 2d at 1365 (citations omitted).

The Court concludes that under the PSLRA's heightened pleading standard, the factual allegations in Plaintiff's complaint are insufficient to state a claim of scienter, as the Complaint fails to plead "with particularity facts giving rise to a strong inference" that Defendants either intended to defraud investors

or were severely reckless when they made the allegedly materially false or incomplete statements. Mizzaro, 544 F.3d at 1238.[23]

Defendants assert that because the Amended Complaint "fails to plead any 'primary violation' under Section 10(b), Plaintiff's 'derivative' control person claims under Section 20(a) necessarily fail. Doc. No. [50-1], p. 16, n.7. The Court agrees. See Mizzaro, 544 F.3d at 1255 ("Because [lead plaintiff] failed to adequately plead a violation of § 10(b) and Rule 10b–5 by [company defendant/individual defendants], its § 20(a) control-person claims against the individual defendants necessarily fail as well.").

## IV. CONCLUSION

Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws (Doc. No. [50]) is hereby **GRANTED**.

Plaintiff's request for leave to amend (Doc. No. [54], p. 42, n.40) is **DENIED** as procedurally improper in the absence of a motion.[24]

---

[23] "Notably, the '[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005)).

[24] First, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." In re Galectin Therapeutics, Inc. Sec. Litig., 157 F. Supp. 3d 1230, 1240 (N.D. Ga. 2015) (Jones, J.) (citation and internal quotation marks omitted), *aff'd,* 843 F.3d 1257 (11th Cir. 2016).



AO 72A
(Rev.8/82)

Pursuant to the mandatory sanctions review provisions of the PSLRA, 15 U.S.C. § 77z-1(c) and 15 U.S.C. § 78u–4(c), the Court does not find that any party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.[25]

Lead Plaintiff's Motion for Leave to File Surreply (Doc. No. [60]) is **GRANTED** in the exercise of the Court's discretion.[26] The Clerk is **DIRECTED** to file Doc. No. [60-1] (without cover page and "proposed" title), as Plaintiff's surreply. The document shall be deemed filed as of the date of this Order.

**IT IS SO ORDERED,** this 26th day of September, 2018.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

[25] See In re JDS Uniphase Corp. Sec. Litig., No. C 02-1486 CW, 2008 WL 753758, at *2 (N.D. Cal. Mar. 19, 2008) ("In assessing whether the filing of a particular paper was frivolous under Rule 11, the court should not consider the ultimate failure on the merits or the subjective bad faith of the signer, but rather whether the position taken was 'legally unreasonable' or 'without factual foundation.'") (citations omitted). Here, the positions taken were legally reasonable and with factual foundation.

[26] "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies. Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists . . . . ." Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). As it appears that the surreply provides additional relevant information, the Court will permit Plaintiff's surreply.



AO 72A
(Rev.8/82)